**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karina Joy Edmonds, | No. CV-25-00352-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Karina Joy Edmonds's Application for Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply (Doc. 15). The Court has reviewed the briefs and Administrative Record (Doc. 8, "R.") and now reverses the Administrative Law Judge's decision (R. at 37–48) as upheld by the Appeals Council (R. at 1–3).

## I.    BACKGROUND

Plaintiff filed an application for Supplemental Security Income on July 22, 2021, for a period of disability beginning April 16, 2019. (R. at 37.) Plaintiff's claims were initially denied on June 24, 2022, and upon reconsideration on April 15, 2023. (R. at 37.) Plaintiff then testified at a hearing before an Administrative Law Judge ("ALJ") on November 7, 2023. (R. at 54–86.) On March 29, 2024, the ALJ denied Plaintiff's

Application. (R. at 37–48.) On March 23, 2023, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) On February 3, 2025, Plaintiff filed this action seeking judicial review. (Doc. 1.)

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here; the pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, adjustment disorder, and post-traumatic stress disorder ("PTSD"). (R. at 39.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 41.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations, including that Plaintiff can only "understand, remember and carry out simple instructions, make simple decisions, perform simple tasks, and have occasional contact with coworkers and [the] public." (R. at 43.) Based on a vocational expert's answers to hypothetical questions, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including as a janitor, housekeeper, or store laborer, and Plaintiff is therefore not disabled under the Act. (R. at 47–48.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.

*Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.    ANALYSIS

Plaintiff contends the "ALJ's RFC does not reasonably describe the 'total limiting effects' of [her] mental impairments" because the ALJ's "assessment of the opinion

evidence is contrary to law" and "he did not demonstrate clear and convincing reasons to dispute her description of her symptoms and limitations." (Pl. Br. at 2.)

### A.    Medical Opinion Evidence

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F.4th at 790. Nonetheless, in rejecting a treating or examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)).

Here, the Court agrees with Plaintiff that the ALJ's review of the medical evidence contains a number of inconsistencies and errors. As the ALJ noted, the record shows Plaintiff suffers from PTSD from prior domestic abuse, causing her to panic, be

hypervigilant and anxious, self-isolate, and have trouble controlling her emotions. (R. at 41–43, 45.) The record also shows that "break through symptoms may impair socially appropriate behavior" and "concentration if triggered at work." (R. at 42–43.)

In the initial review of Plaintiff's application, the State Agency consultant opined that Plaintiff's mental disorders were "severe," resulting in moderate limitations in the ability to interact with others or concentrate, persist, or maintain pace. (R. at 91.) More specifically, the State Agency consultant concluded Plaintiff was moderately limited in her ability to "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "to interact appropriately with the general public." (R. at 93–94 (signed by Eric Penner, Ph.D.).) On reconsideration, the State Agency review tracks the initial review. (R. at 100, 105 (signed by Leif Leaf, Ph.D.).)

The ALJ found these opinions "not persuasive" because he appears to conclude the psychological consultants did not use "functional terms" in one area of the evaluation, although the ALJ's explanation is bewildering and essentially incomprehensible, with no pin cite to the record:

> As undefined by the psychological consultants, the terms of one to two step tasks provide occupational opportunities regardless of the restrictions to the degree of education or reasoning, but still find the claimant not disabled per standards under SSR 85-15.

(R. at 44 (verbatim).) The ALJ also complains that the reviewers "use the terms 'consistent, productive basis across a routine work day and week,' which [are] not defined," implying that they cannot be understood. (R. at 44.) Aside from these largely irrelevant criticisms of two snippets plucked from the State Agency reviews, the ALJ fails to even address the principal findings of those evaluations by medical professionals—that based on the medical record, Plaintiff had moderate limitations in, among other things, her ability to maintain attention and concentration, maintain regular attendance, or complete a normal workday and workweek without interruptions (R. at 91, 93-94. 100, 105). The ALJ summarily

rejects those conclusions and thus does not consider them in the eventual RFC formulation.[1] (R. at 43–45.) This by itself was error. SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")

 Instead, the ALJ cites evidence in the record to reach his own medical conclusions (R. at 44), which too was error. *Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (stating ALJ may not render his/her own medical opinion or independently assess clinical findings); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.").

The medical evidence also includes an evaluation of Plaintiff by consultive psychological examiner Jose Abreu, Ph.D., who concluded that PTSD is present and "seems fairly managed with treatment," although "break through symptoms may impair concentration if triggered at work," going to her persistence and ability to sustain concentration as well as her social interaction abilities. (R. at 603–04.) Dr. Abreu also noted that Plaintiff's "[d]ifficulty sleeping may impair her ability to maintain regular work attendance," also going to her persistence and ability to sustain concentration. (R. at 603–04.)

In his review of Dr. Abreu's evaluation, the ALJ found Dr. Abreu's opinion "not persuasive," in part because the evaluation was "not entirely supported by the examination, which was largely normal." (R. at 45.) It should be obvious that Dr. Abreu's conclusions about Plaintiff's abilities "if triggered at work" and about whether she can maintain regular work attendance due to her difficulty sleeping were not demonstrated during Dr. Abreu's examination of Plaintiff by their very nature, so of course those conclusions could be

---

[1] The applicable Social Security Regulation's listed mental work activities include "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or pressures in a work setting." 20 CFR § 404.1513(a)(2)(ii).

characterized—if inaccurately—as "not entirely supported by the examination." In other words, the ALJ's first reason for discounting Dr. Abreu's conclusions lacks merit.

The ALJ next states that Dr. Abreu's "opinion is also not entirely consistent with the evidence as a whole," without explaining in any detail why or how. (R. at 45.) *See Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). Instead, the ALJ again resorts to his own diagnosis of Plaintiff based on his own review of her symptoms, which, as the Court noted *supra*, is also error. (R. at 45.)

And next, the ALJ states, "Dr. Abreu's opinion does not offer specific functional limitations and terms such as symptoms may 'impair concentration' or 'ability to maintain regular work attendance' is not defined for functional terms. (R. at 45 (verbatim).) Aside from being essentially incomprehensible, to the extent it is a criticism of Dr. Abreu's functional findings or the terminology he uses to express them, the criticism lacks merit. Dr. Abreu's findings, as detailed *supra*, are expressed in terms consistent with the Social Security Regulations and supported by his factual findings. For these reasons, the ALJ fails to give any reason supported by the record to discount Dr. Abreu's opinions or to disregard them in his formulation of Plaintiff's RFC.

Finally, the medical record contains Plaintiff's treatment notes by therapists Sarah Casey, MSW, who has treated Plaintiff since 2020, and Sean Elrod, Psychiatric Mental Health Nurse Practitioner, who has treated Plaintiff since 2021. (*E.g.*, R. at 408, 413, 419, 459, 480, 606, 736, 741–43.) Based on her treatment of Plaintiff, Ms. Casey observed that Plaintiff's "persistent PTSD symptoms are sensitivity to light and sound, easy triggering, stress intolerance, with multiple triggers per week with symptoms occasionally lasting up to two weeks." (Pl. Br. at 12 (citing R. at 736).) Plaintiff "has a history of suicide attempt, passive suicidal ideation, social isolation, and insomnia" and "has difficulty completing tasks in a timely and organized manner, struggles to regulate her emotions, [and] needs ongoing emotional support." (Pl. Br. at 12 (citing R. at 736).) As a result, Ms. Casey opined

that Plaintiff has an "extreme" limitation in concentration, persistence, and task completion and, depending on the "level of activation/fatigue/dysregulation," at least "marked" limitations in her ability to adapt or manage herself or understand, remember, or apply information. (R. at 741–42.) Ms. Casey concludes Plaintiff would not be able to complete an 8-hour workday "4+" days per month. (R. at 743.)

For his part, based on his treatment of Plaintiff, Mr. Elrod also opined that Plaintiff has an "extreme" limitation in concentration, persistence, and task completion, and "marked" limitations in her ability to adapt or manage herself or understand, remember, or apply information. (R. at 685–86.) He likewise opined that Plaintiff would not be able to complete an 8-hour workday "4+" days per month. (R. at 687.)

Like all the other medical evidence before him, the ALJ finds these medical opinions from Plaintiff's treating therapists "not persuasive," again errantly relying on his own diagnosis fashioned from his own select reading of the medical evidence instead of the opinions of medical professionals, including those who have treated Plaintiff. (R. at 45–46.) The ALJ also finds the opinions are not persuasive because they are inconsistent with the conclusions of the state agency consultants—the very conclusions the ALJ also found not persuasive. As Plaintiff argues, "as a matter of logic alone," this attempt at a reason to discount the opinions of Plaintiff's treating therapists utterly fails. (R. at 45–46.)

And finally, while the ALJ continuously states that all of the medical experts' opinions are inconsistent with "largely normal observations" during certain examinations (*e.g.*, R. at 46), the ALJ fails to consider the medical experts' conclusions based on the treatment records that Plaintiff's symptoms are variable and her break through symptoms will tend to impair socially appropriate behavior and concentration if triggered at work. (*E.g.*, R. at 603, 742; *see* Pl. Br. at 20–21.) To the extent the record shows Plaintiff's mental health fluctuates over time, it is improper for the ALJ to discount Plaintiff's evidence of mental illness "merely because symptoms wax and wane in the course of treatment." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, although SSR 96-8p explains that "[t]he RFC assessment considers only functional limitations and restrictions

- 8 -

that result from an individual's medically determinable impairment or combination of impairments," it also describes RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting *on a regular and continuing basis*." SSR 96-8p (emphasis added).

For all these reasons, the ALJ erred in weighing the medical evidence and considering it in the formulation of Plaintiff's RFC, and the Court will grant Plaintiff's request to remand this case to the SSA for further proceedings.

### B.   Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred by rejecting her symptom testimony without providing adequately specific, clear, and convincing reasons to do so. (Pl. Br. at 21–22.) Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)).

As Plaintiff argues in her brief, the ALJ's evaluation of claimant's description of her limitations is "inextricably intertwined" with his assessment of the medical record. (Pl. Br. at 21.) Under 20 CFR § 416.929(c)(4), an ALJ must determine if a claimant's impairments can be "reasonably expected to cause the symptoms and limitations described," so "if the ALJ has improperly evaluated the opinion evidence and the record to begin with, § 416.929(c)(4)'s required comparison analysis is entirely tainted from the outset." (Pl. Br. at 21.)

Moreover, as Plaintiff also points out, to the extent the ALJ evaluates Plaintiff's symptom testimony in detail at all (*e.g.*, R. at 44), the reasons the ALJ provides to discount it are entirely inadequate. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (explaining that "[g]eneral findings are insufficient" and "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Ong v. Comm'r of Soc. Sec. Admin.,* No. CV-17-00960-PHX-BSB, 2018 WL 3323169, at *9

(D. Ariz. July 6, 2018) (reversing the ALJ's finding of non-credibility based on two vacations the plaintiff took to Jamaica because the ALJ did not discuss any details of the plaintiff's travel or her activities during the trips and did not explain how the trip was inconsistent with the plaintiff's testimony); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

The ALJ therefore also erred by failing to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** reversing the decision of the Administrative Law Judge (R. at 37–48) as upheld by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter final judgment accordingly and close this case.

Dated this 31st day of March, 2026.

_____
Honorable John J. Tuchi
United States District Judge